**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

AGUDAS CHASIDEI CHABAD OF UNITED
STATES,

                               Plaintiff,

      v.

RUSSIAN FEDERATION, et al.,

                            Defendants.

Misc. Case No. 15-184 Part 1

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
SBERBANK CIB USA, INC.'S MOTION FOR A PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................................... 2

      A.      The *Chabad* Litigation ................................................................................. 2

            1.      The Library and the Archive .............................................................. 2

            2.      The Litigation ..................................................................................... 3

      B.      Sberbank ........................................................................................................ 5

      C.      Sberbank and U.S. Sanctions ......................................................................... 6

      D.      The Present Dispute ...................................................................................... 6

III.    ARGUMENT ............................................................................................................. 7

      A.      Sberbank USA Has Not Shown That it is Entitled to a Protective Order ............... 8

      B.      Chabad Is Entitled to Information Regarding Sberbank's Russian
             Counterparts ............................................................................................... 10

IV.    CONCLUSION ....................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Agudas Chasidei Chabad of United States v. Russian Fed'n*,
  466 F. Supp. 2d 6 (D.D.C. 2006)............................................................... 1, 2

*Agudas Chasidei Chabad of United States v. Russian Fed'n*,
  528 F.3d 934 (D.C. Cir. 2008)................................................................. 3, 4

*Agudas Chasidei Chabad of United States v. Russian Fed'n*,
  729 F. Supp. 2d 141 (D.D.C. 2010)........................................................ 3, 4

*Agudas Chasidei Chabad of United States v. Russian Fed'n*,
  915 F. Supp. 2d 148 (D.D.C. 2013)............................................................ 4

*Agudas Chasidei Chabad of United States v. Russian Fed'n*,
  798 F. Supp. 2d 260 (D.D.C. 2011)............................................................ 4

*Camden Iron and Metal, Inc. v. Marubeni America Corp.*,
  138 F.R.D. 438 (D.N.J. 1991) ................................................................... 10

*Cipollone v. Liggett Grp., Inc.*,
  785 F.2d 1108 (3d Cir.1986) ...................................................................... 8

*Concord Boat Corp. v. Brunswick Corp.*,
  169 F.R.D. 44 (S.D.N.Y. 1996) .................................................................. 8

*Coryn Group II, LLC, v. O.C. Seacrets, Inc.*,
  265 F.R.D. 235 (D. Md. 2010) ........................................................... 12, 13

*CSC Consulting, Inc. v. Aluminum.com, Inc.*,
  No. 00-9513, 2001 WL 546448 (S.D.N.Y. May 23, 2001)......................... 8

*Havens v. Metro. Life Insurance Co.*,
  No. 94-1402, 1995 WL 234710 (S.D.N.Y. Apr. 20, 1995)......................... 8

*Hunter Douglas, Inc. v. Comfortex Corp.*,
  No. M8-85 (WHP), 1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11, 1999)............... 10

*In re Ski Train Fire of November 11, 2000 Kaprun Austria*,
  No. 1428, 2006 U.S. Dist. LEXIS 29987 (S.D.N.Y. May 16, 2006) ........................ 13

*Negotiated Data Sols. LLC v. Dell*,
  No. 09-cv-80012, 2009 U.S. Dist. LEXIS 25026 (N.D. Cal. Mar. 17, 2009) ............ 9

*Republic of Argentina v. NML Capital, Ltd.*,
  134 S. Ct. 2250 (2014) ................................................................................ 7

*Sanofi-Aventis v. Sandoz, Inc.*,
  272 F.R.D. 391 (D.N.J. 2011) ........................................................................... 11, 13

*SEC v. Credit Bancorp, Ltd.*,
  194 F.R.D. 469 (S.D.N.Y. 2000) ............................................................................. 12

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
  No. 01-3016, 2002 WL 1835439 (S.D.N.Y. Aug. 6, 2002) ....................................... 10

*Versata Software v. Internet Brands, Inc.*,
  No. 11-50844, 2011 U.S. Dist. LEXIS 118647 (E.D. Mich. Oct. 14, 2011) ............... 9

*Zenith Elecs. LLC v. Vizio, Inc.*,
  No. M8-85, 2009 U.S. Dist. LEXIS 90896 (S.D.N.Y. Sept. 25, 2009) ...................... 13

**Statutes**

Foreign Sovereign Immunities Act of 1976 (FISA), 28 U.S.C. §§ 1602, et. seq. .......................... 4

**Rules**

Fed. R. Civ. P.  26 .................................................................................................................... 8

Fed. R. Civ. P. 45(f) ................................................................................................................. 2

**Regulations**

Executive Order 13662,
  79 Fed. Reg. 16169 (Mar. 24, 2014) ...................................................................... 6

## I.      INTRODUCTION

Agudas Chasidei Chabad of United States ("Chabad") respectfully submits this opposition to Sberbank CIB USA, Inc.'s ("Sberbank USA") Motion for a Protective Order (the "Motion").  Sberbank USA is a wholly-owned, indirect subsidiary of Sberbank of Russia OJSC ("Sberbank"), the largest bank in that country.  The Motion is directed to a testimonial subpoena that Chabad issued as part of its decades-long effort to recover sacred and religious texts that were confiscated by, and remain in the unlawful possession of, the government of the Russian Federation.  In view of Sberbank's self-described importance to the Russian Federation and its intimate ties with the Russian Government and its leaders, the bank is currently subject to the sanctions regime the United States implemented in the wake of the Russian Federation's occupation of eastern Ukraine.

Nonetheless, Sberbank USA contends that it is unfairly being "pulled into" a dispute regarding an "aging judgment," and that it is not required to provide information regarding its corporate parent.  In some respects, the parties are in agreement: Chabad has fought long and hard to retrieve its property, including a 10-year litigation against the Russian government in the U.S. District Court for the District of Columbia.  *See Agudas Chasidei Chabad of United States v. Russian Fed'n*, 466 F. Supp. 2d 6 (D.D.C. 2006) (Lamberth, J.).  That litigation resulted in a judgment against the Russian Federation and the other Defendants, followed by the entry of an order that Russia is in contempt of the district court's judgment and the imposition of contempt sanctions in the amount of $50,000 per day.  Rather than excusing Sberbank USA from compliance with Chabad's subpoena, these facts highlight the importance attached to Sberbank USA's respect for a subpoena that is narrowly directed to the collection of information relevant to the enforcement of the district court's judgment and orders.

As explained more fully below, Chabad is entitled to take a deposition of a knowledgeable Sberbank USA representative for at least two independent reasons:  (i) Chabad is entitled to inquire as to the limited efforts that Sberbank USA undertook to identify relevant materials responsive to the subpoena, and (ii) Chabad is entitled to inquire as to Sberbank USA's half-hearted and equivocal representation that it does not have access to information and materials held by its corporation affiliates in Russia.  For these reasons, the Motion should be denied.

## II.    STATEMENT OF FACTS

### A.    The *Chabad* Litigation[1]

#### 1.    The Library and the Archive

Chabad is a non-profit religious organization incorporated in the State of New York. More importantly, Chabad is the inheritor and embodiment of 240-year old movement within Orthodox Judaism known as Chabad Chasidism.  Chabad Chasidism traditionally has been led by a leader referred to as a "Rebbe"; the First Rebbe, Rabbi Zalman, founded the Chabad movement in 1775.  His son, who succeeded him as the Rebbe, moved to the Russian town of Lubavitch, where the movement maintained its headquarters for over a century.   During that period, Chabad compiled an extensive collection of books, documents, and other materials that comprised the community's organizational records and spiritual history.

The property at issue in Chabad's dispute with Russia includes  12,000 books and manuscripts (the "Library") and 25,000 pages of documents and other materials compiled by Chabad's religious leaders (the "Archive") (together, the "Collection").  "The religious and

---

[1] The facts outlined below are drawn from Judge Lamberth's decisions in the litigation underlying the Sberbank USA subpoena.  *See, e.g.*, *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 466 F. Supp. 2d 6 (D.D.C. 2006).  Further, pursuant to Rule 45(f), Chabad is requesting that Sberbank USA's Motion be transferred to that District of Columbia—the issuing court—for the reasons stated in the contemporaneously filed motion and memorandum of law.

historical importance of the Collection to Chabad . . . can hardly be overstated." *Agudas Chasidei Chabad of United States v. Russian Fed'n,* 528 F.3d 934, 938 (D.C. Cir. 2008).

During World War I, as the German army advanced into Russian territory, the then-presiding Rebbe (the Fifth Rebbe) placed the Library in storage.  The Library fell prey to Germany's opponents, however, and the Soviet government seized the Library, which it (and its successor, the government of the Russian Federation) has held to this day.

In 1927, the Soviet government arrested the Sixth Rebbe and sentenced him to death, but ultimately allowed him to leave the country.  With the Archive in tow, the Sixth Rebbe settled in Poland.  When the Nazi regime and the Soviet Union invaded Poland in 1939, the Sixth Rebbe fled to the United States; unfortunately he had no choice but to leave the Archive behind.  The Nazis seized the Archive and shipped it to Germany.  At the end of World War II, the Soviets found the Archive and victoriously claimed it as "trophy documents."  Thus, the Archive, too, ended up in the possession of the Soviet, and now the Russian Federation, government.

Chabad has attempted to reclaim its property through judicial channels in the Soviet Union, and then the Russian Federation, but the Russian government has intervened to prevent their return.  Both the Library and the Archive remain in Russia's possession and control.  *See Agudas Chasidei Chabad of United States v. Russian Fed'n*, 729 F. Supp. 2d 141, 147 (D.D.C. 2010).

### 2.    The Litigation

In 2004, Chabad brought suit against the Russian Federation, the Russian Ministry of Culture and Mass Communication, the Russian State Library, and the Russian State Military Archive (together, "Russia" or "Defendants") to recover its property.  Russia asserted the defense of foreign sovereign immunity.  Following a decision in the district court, both parties appealed to United States Court of Appeals for the District of Columbia Circuit, which held that

3

Chabad's suit could proceed.  *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 528

F.3d 934, 939 (D.C. Cir. 2008).  On remand, the Defendants declined to participate further in the

lawsuit.

Back in the district court, Chabad followed the procedural steps spelled out in the Foreign

Sovereign Immunities Act, 28 U.S.C. §§ 1602, *et seq.* ("FSIA")*,* and moved for a default

judgment.  The district court found that Russia "unlawfully possess[es] and refuse[s] to

relinquish" the Collection, 729 F. Supp. 2d at 145 (D.D.C. 2010), and held that the materials

were taken in violation of international law.  *Id.* at 146.  The court ordered the Defendants to

return the materials, *Agudas Chasidei Chabad of United States v. Russian Federation*, No. 05-

1548 (Dkt. 80) (July 30, 2010), but Russia has refused and continues to refuse to comply with the

Court's ruling.  *Agudas Chasidei Chabad of United States v. Russian Federation*, 798 F. Supp.

2d 260, 264-65 (D.D.C. 2011).

Following another series of proceedings necessary to comply with the FSIA, the district

court entered an order authorizing Chabad to take steps to enforce the district court's judgment.

*Id.* at 271 (issuing an order "to permit [Chabad] to establish that one of the prerequisites [for

attachment] is satisfied so that [it] may pursue specific attachments without worry over any

lingering § 1610(c) requirements").[2]  Chabad also moved for civil contempt sanctions.  The court

concluded that sanctions were appropriate, and entered an order requiring Defendants to pay

Chabad $50,000 for each day that they failed to comply with the court's order.  *Agudas Chasidei

Chabad of United States v. Russian Fed'n*, 915 F. Supp. 2d 148 (D.D.C. 2013); Order (Dkt. 115).

Russia continues to ignore the district court's judgment.  Sanctions continue to accrue.

---

[2] The FSIA, 28 U.S.C. § 1610(c), requires a court to determine (1) that "a reasonable period of time has elapsed following the entry of judgment", and (2) the "the giving of any notice required under section 1608 (e) of this chapter" has occurred.  Separately, a court has to determine if attachment is proper under Sections 1610(a)-(b).  798 F. Supp. 2d at 271.

###### B.      Sberbank

Sberbank USA, the movant, is an indirect, wholly-owned subsidiary of Sberbank of

Russia (or "Sberbank").  Serritella Decl., Ex. 4, at SB000045-46 (Sberbank is the "100% indirect

owner of" Sberbank USA).   Sberbank is Russia's "largest and oldest" bank, and touts its

importance as the "circulatory system of the Russian economy, accounting for one third of its

banking system."  McCallum Decl., Ex. 1.  Sberbank also has ties to the Russian government:

over 50% of Sberbank's shares are held by the Central Bank of the Russian Federation.  *See*

McCallum Decl., Ex. 2 at p. 63.  Moreover, Sberbank is run by "close Putin ally German Gref."

McCallum Decl., Ex. 3.

Sberbank CIB CJSC ("Sberbank CIB") is the "corporate and investment business" of

Sberbank of Russia.  McCallum Decl., Ex. 2 at p. 12.  Sberbank CIB's client base includes "key

Russian and international investors."  McCallum Decl., Ex. 4. Sberbank CIB is 100% owned by

Sberbank.[3]

Sberbank USA, then, is the U.S. arm of the corporate and investment business of

Sberbank.  Sberbank CIB (of Russia) states on its website that it has "its own offices in Moscow,

London, New York, and Nicosia."  McCallum Decl., Ex. 6.  Sberbank CIB (of Russia) lists

under its management Mr. Chris Osborne, who is the CEO of Sberbank CIB USA, Inc.

McCallum Decl., Ex. 7.[4]  Mr. Levy, Sberbank USA's Chief Financial Officer who also submitted

a declaration in support of Sberbank USA's Motion, lists on his public LinkedIn Account that his

---

[3] Sberbank CIB is listed as a 100% subsidiary of the Sberbank "Group," which includes
Sberbank of Russia and its subsidiaries.  McCallum Decl., Ex. 5 at p. 86.

[4] This information may be dated, as Bloomberg lists Mr. Peter Urbanczyk as holding that
position, stating that Mr. Osborne will focus on "general issues of Sberbank of Russia's
development in the U.S."  McCallum Decl. Ex. 8.  The point that Sberbank USA management is
and has been intertwined with Sberbank CIB's management, however, still stands.

responsibilities include "coordination with foreign affiliates and Central Budget coordination office."  McCallum Decl., Ex. 9.

## C.     Sberbank and U.S. Sanctions

In the spring of 2014, the United States initiated efforts to curb, through sanctions, Russia's incursions into the Crimean region of Ukraine.  The President broadened the reach of the sanctions in July 2014 to include entities "in the financial services, energy, and arms or related materiel sectors of Russia."  McCallum Decl., Ex. 10; *see also* Executive Order 13662, 79 Fed. Reg. 16169 (Mar. 24, 2014).  The U.S. Government expanded the sanctions regime again in September 2014 to cover additional entities, including Sberbank.

The Department of the Treasury explained that the sanctions were directed to Sberbank so as to "remove access to U.S. dollar financing for these financial institutions, and impose additional significant costs on the Russian Government for its continued provocations." McCallum Decl., Ex. 11.  The sanctions imposed on Sberbank prohibit "all transactions in, provision of financing for, and other dealings in new debt of longer than 30 days maturity or new equity of persons determined to be subject to this Directive."  McCallum Decl., Ex. 12.

## D.     The Present Dispute

In view of Sberbank's acknowledged (indeed, self-described) critical role in the Russian economy, on April 30, 2015, Chabad served a subpoena on Sberbank USA in an effort to identify assets belonging to the Russian Federation and/or the other Defendants.  The subpoena sought documents as well as a Rule 30(b)(6) deposition of a Sberbank USA corporate representative.

The subpoena was directed to Sberbank USA, which was defined to include Sberbank USA as well as its "affiliates, parents, subsidiaries, . . . including but not limited to Sberbank CIB and Sberbank of Russia."  Serritella Decl., Ex. 1 at Attachment A, p. 2.  The subpoena

6

sought, for example, documents sufficient to identify "accounts maintained in the United States by or on behalf of the Russian Federation." Serritella Decl., Ex. 1 at Attachment A, p. 6. Sberbank USA objected to the scope of the subpoena, limiting its response to "Sberbank CIB USA, Inc.," and thereby refusing to provide any information as to other entities, including Sberbank USA's affiliates in Russia. Serritella Decl., Ex. 2 at p. 3. Sberbank USA included other general specific and objections, and with respect to the document requests, stated that it intended to product at least "a document."

After several prompts for a substantive response to the subpoena, on June 19, 2015, Sberbank USA produced the document – a publicly available BrokerCheck Report regarding Sberbank USA. Sberbank USA claimed that (subject to its objections) it had not identified any other responsive materials called for by the subpoena. The parties then conferred regarding the scope of the deposition also called for by the subpoena. Chabad took the position, among other things, that a deposition covering information and materials that may be held by Sberbank USA's affiliates, as well as Sberbank USA's ability to obtain information known to Sberbank's USA's affiliates (including Sberbank of Russia), is necessary and proper. Sberbank USA then filed the Motion on June 26, 2015.

## III.   ARGUMENT

Sberbank USA does not contest that Chabad's subpoena is aimed at relevant materials – nor could it, as Chabad's subpoena is directed to the identification of Russian Federation assets that may be subject to attachment pursuant to the district court's authorization. *See, e.g.*, *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2257-58 (2014) (upholding subpoenas directed to the identification of a foreign sovereign's attachable assets). Instead, Sberbank USA contends that (1) it is not required to provide information relating to its corporate parent and related entities, and therefore (2) it has provided the only relevant information it is

required to produce, making a deposition cumulative.  Mot. at 4-5.  In other words, asserting at

the outset that its duties in responding to the subpoena are limited, Sberbank USA concludes it

has no obligation to look for or provide additional materials.  On that ground alone, it seeks a

court order protecting Sberbank USA from providing a deponent to testify on matters relating to

Sberbank USA's compliance with the subpoena, about its relationship with its affiliates, about its

ability to obtain information from those affiliates for various purposes, and similar  matters.

Sberbank USA has not shown that it has met the strict test it must pass to avoid a deposition

pursuant to Chabad's subpoena.

### A.      Sberbank USA Has Not Shown That it is Entitled to a Protective Order

Sberbank USA, as the movant, bears the burden of demonstrating good cause sufficient

to warrant a protective order under Rule 26 of the Federal Rules of Civil Procedure.  *Havens v.*

*Metro. Life Insurance Co.*, No. 94-1402, 1995 WL 234710, at *10 (S.D.N.Y. Apr. 20, 1995).

Moreover, Sberbank is obligated to demonstrate good cause with "particular and specific

demonstration of fact as distinguished from stereotyped and conclusory statements."  *Id.* at *10

(quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)); *see also CSC*

*Consulting, Inc. v. Aluminum.com, Inc.*, No. 00-9513, 2001 WL 546448 (S.D.N.Y. May 23,

2001) (denying motion for a protective order).  Ultimately, "what constitutes an undue burden in

a given instance is a case specific inquiry."  *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D.

44, 53 (S.D.N.Y. 1996).

Sberbank USA's central argument is a classic bootstrap.  As noted above, Sberbank USA

asserts that it has only a limited obligation to produce documents.  It then asserts that it has no

relevant documents, and based on that assertion it concludes that a deposition would be unduly

burdensome.  Mot. at 4.  In effect, a deposition is unnecessary because Sberbank USA says so.

If that were the law, any recipient of a deposition subpoena could avoid its obligations simply by

making an unsubstantiated representation that it has produced all relevant materials, and therefore has nothing relevant to say.  At the very least, a declaration from a subpoena recipient that has produced only one "relevant" document – as Sberbank USA has done – by definition calls for a deposition covering at least the respondent's compliance with its obligations under the subpoena, its diligence in seeking relevant information, and the basis for the respondent's position that no additional responsive documents exist – or, in this case, the respondent's assertions that it does not have ready access to information that no one doubts would be highly relevant to the matter at hand.

In fact, the single document that Sberbank USA produced pursuant to the subpoena calls for further examination by deposition.  That document states that Sberbank USA is a broker-dealer, and that it has entered into a clearing agreement with Pershing LLC by which Pershing "clears and carries" the "the accounts of the firm and its customers."  Serritella Decl., Ex. 4, at SB000014.  If for no other purpose (and there are many), Chabad is entitled to a deposition to inquire into the nature of the Sberbank USA-Pershing relationship, and in particular, whether Sberbank USA collected and produced relevant information regarding the Sberbank USA customer accounts maintained at Pershing.

The cases on which Sberbank USA relies are inapposite.  In *Negotiated Data Sols. LLC v. Dell*, No. 09-cv-80012, 2009 U.S. Dist. LEXIS 25026, at *11 (N.D. Cal. Mar. 17, 2009), the deposition was deemed cumulative where there was no "reasonable basis to suspect" that there additional relevant information might be identified.  Likewise, in *Versata Software v. Internet Brands, Inc.*, No. 11-50844, 2011 U.S. Dist. LEXIS 118647 (E.D. Mich. Oct. 14, 2011), the court found the deposition of a third party unnecessary as the information was available from, among other places, a party to the lawsuit.

Here, by contrast, Chabad is seeking information beyond the contents or nature of the single document Sberbank USA produced.  Chabad is seeking information regarding Sberbank USA's access to information and documents that it did *not* produce.   Sberbank USA offers no basis for precluding a deposition into these and similar subjects.

**B.      Chabad Is Entitled to Information Regarding Sberbank's Russian Counterparts**

Sberbank USA also takes the position that it is not required to identify, request, and produce documents maintained by its corporate parents and affiliates.  The Motion is based on an incorrect legal standard.  Under the correct standard, the issue is not whether Sberbank USA gets the information from Sberbank, but whether Sberbank USA *could* get the information from Sberbank.  Chabad is entitled to take a deposition into the circumstances in which Sberbank USA could get information responsive to the subpoena from its affiliated companies, and the nature of Sberbank USA's corporate relationships generally.

At the outset, it appears to be undisputed that Sberbank USA is required to identify and produce documents and materials held by its affiliates, including its Russian affiliates, if Sberbank USA has "custody and control" over that information.  The question of "custody and control" turns on whether Sberbank USA has "access to" and "the ability to obtain" the documents and information held by the affiliated entities.  *Hunter Douglas, Inc. v. Comfortex Corp.*, No. M8-85 (WHP), 1999 U.S. Dist. LEXIS 101, at *9 (S.D.N.Y. Jan. 11, 1999) (applying the "custody and control" inquiry to document requests); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01-3016, 2002 WL 1835439, at *4 (S.D.N.Y. Aug. 6, 2002) (applying the "custody and control" to information sought at the deposition of a corporate representative).

"Federal courts construe 'control' very broadly."  *Camden Iron and Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991) (discussing Rule 34).  For

example, courts have found a sufficient degree of control where: (1) the subsidiary company was

the 'alter ego' of its affiliate; (2) the subsidiary was an agent of the parent in the pertinent

transaction; (3) the subsidiary "c[ould] secure documents of the principal parent to meet its own

business needs and helpful documents for use in litigation"; or (4) "there [was] access to

documents when the need ar[ose] in the ordinary course of business." *Id.* at 441-42.  Moreover,

the "custody and control" test has even been applied to require corporate representatives to

obtain information from a subsidiary "with eight degrees of ownership separation." *Sanofi-*

*Aventis v. Sandoz, Inc.*, 272 F.R.D. 391, 395 (D.N.J. 2011) (summarizing cases) (internal

citations omitted).  It is standard for third-party subpoena recipients to retrieve information from

their parent and sibling companies; ultimately, "corporate form without more does not end the

inquiry;" rather, the determination "turns on the facts of each case." *Id.* at 394.

      Sberbank USA gingerly avoids any statement to the effect that, if it needed the

information sought in the subpoena for its own business purposes, it would not (or could not)

obtain the information from its Russian parents.  Rather, Sberbank USA's declarant, Mr. Levy,

carefully states only that Sberbank USA does not typically ask for the information in the

ordinary course of business.[5]  As noted above, however, that is not the test.

      Particularly in these circumstances, a deposition of Sberbank USA is not only

appropriate, it is essential.  Through a deposition, Chabad will be able to question Sberbank USA

regarding its relationship with its corporate parents, about the documents and information that

Sberbank USA has (or could have) access to at Sberbank of Russia, and on similar matters

---

[5]     Sberbank USA has provided scant information regarding its dealings with its corporate
parent regarding the requested information, stating only that it is "unaware of whether Sberbank
of Russia" has any responsive documents, that Sberbank USA is "not involved in the daily
business affairs of Sberbank of Russia," and that Sberbank of Russia does not share information
"in the ordinary course of business."  Levy Decl. ¶¶ 14-16.  This, though, does not answer the
question of whether Sberbank USA has access to or could obtain documents and information
from Sberbank of Russia.

concerning the Sberbank corporate family, the relationship of the family members, their interactions with each other - and ultimately, on Sberbank USA's ability or inability to provide the information and materials that are undeniably available somewhere within the Sberbank family.

Indeed, this effort is not based on some whim or vain hope.  Publicly available information suggests that Sberbank USA has ready access to information and documents in the immediate possession of its corporate parent.  For example, Sberbank CIB (of Russia) states that its management includes Chris Osborne, CEO of Sberbank CIB USA, Inc.  McCallum Decl., Ex. 7.  Mr. Levy, Sberbank's Chief Financial Officer and a declarant in support of the Motion, lists on his public LinkedIn Account that his responsibilities include "coordination with foreign affiliates and Central Budget coordination office."  McCallum Decl., Ex. 9.  Where the facts indicate that a party could obtain information called for in a subpoena, it is subject to a particularly heavy burden to show why it should not be required to do so.  *See Coryn Group II, LLC, v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010) ("Where a company fails to provide sufficient evidence why it would not have access to the basic information of its affiliate(s), that information is presumed to be known or reasonably available to the corporation.").  A deposition would provide Chabad the opportunity to inquire further into these issues.

Finally, the case law Sberbank USA cites is inapposite.   In one case, the court (and not the subpoena recipient) concluded that the subpoenaed entity did not have *access* to the information in question.  *See SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 473-74 (S.D.N.Y. 2000) (compliance not required where subpoenaed entity did not have "access to the documents in question").  Of course, no one is capable of drawing a similar conclusion based on the present

record.  In another case Sberbank USA cites, the subpoenaed entity had no connection to the

information sought.  *In re Ski Train Fire of November 11, 2000 Kaprun Austria*, No. 1428, 2006

U.S. Dist. LEXIS 29987 at *28-29 (S.D.N.Y. May 16, 2006) (a corporate designee was not

required to educate itself about the connections between its subsidiary and alleged electrical

defects in a train which led to a fire in Austria—a matter in which the designee "was not

involved"); *see also Zenith Elecs. LLC v. Vizio, Inc.,* No. M8-85, 2009 U.S. Dist. LEXIS 90896,

at *5-*6 (S.D.N.Y. Sept. 25, 2009) (subpoenaed domestic party not required to produce

documents regarding chip manufacturing from its foreign parent where the domestic party had

no involvement in the business).  In other words, the deponent did not have to educate itself on a

matter in which it was "entirely uninvolved."  *Sanofi-Aventis*, 272 F.R.D. at 395 (noting that *In

re Ski Train* was the "only case where a court declined to find information from a related entity

'reasonably available'").

Nothing in the Motion or the supporting declarations suggests or implies that Sberbank

USA has no involvement in the business of its corporate parents, or that it could not get relevant

information if it needed to have it.  Indeed, Sberbank USA has avoided a clear statement that it

does not have access to the relevant information held by its corporate parent in the first

instance—it states only that it is "unaware" whether the requested information exists. Levy Decl.

¶¶ 14-16.  Moreover, Chabad does not seek to depose Sberbank USA about a matter in which it

is "entirely uninvolved."  Instead, Chabad is entitled to depose Sberbank USA precisely to

determine the corporate relationship between Sberbank USA and Sberbank of Russia and the

type of information to which Sberbank USA has access.  *Coryn Group II, LLC*, 265 F.R.D. at

239 (permitting a deposition regarding the "relationships and flow of money among [the

deponent] and its affiliates in relation to their use" of a mark in a trademark case).  And, of

course, because Sberbank of Russia, the self-described "circulatory system of the Russian economy," was sanctioned by the U.S. government because of Russia's involvement in the Ukraine, these inquiries are relevant to the question of where Russian assets are located.

## IV.     CONCLUSION

For the foregoing reasons, Chabad requests that the Court deny Sberbank USA's motion for a protective order and permit the deposition of Sberbank USA on all relevant topics, including its relationship with Sberbank of Russia and the information and documents held by Sberbank of Russia which Sberbank USA has access to.


Dated:  July 16, 2015                              Respectfully submitted,

                                   By:   /s/*Steven Lieberman*
                                         Steven Lieberman (SL 8687)
                                         Rothwell, Figg, Ernst & Manbeck, P.C.
                                         607 14th St., N.W., Suite 800
                                         Washington, DC 20005
                                         Phone:  202-783-6040
                                         Facsimile:  202-783-6031
                                         E-Mail:  slieberman@rfem.com

                                         Nathan Lewin (NL 3424)
                                         LEWIN & LEWIN, LLP
                                         888 17th Street NW, 4th Floor
                                         Washington, D.C.  20006
                                         Phone: (202) 828-1000
                                         Facsimile:  (202) 828-0909
                                         E-mail:  nat@lewinlewin.com

                                         *Counsel for Agudas Chasidei Chabad of United States*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 16, 2015, a true and correct copy of the foregoing

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SBERBANK CIB USA,**

**INC.'S MOTION FOR A PROTECTIVE ORDER** was filed through the Court's Electronic

Filing System (ECF), and was served electronically to the registered participants as identified on

the Notice of Electronic Filing (NEF).


*/s/  Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Manager
Rothwell, Figg, Ernst & Manbeck, P.C.